RAYMOND A. VALCOURT & others[1] vs. ZONING BOARD OF
APPEALS OF SWANSEA & others[2]
(and a companion case[3]).

No. 97-P-2313.

Bristol. May 7, 1999. - October 21, 1999.

Present: PERRETTA, DREBEN, & SPINA, JJ.[4]

*Zoning,* Person aggrieved, Frontage, By-law. *Practice, Civil,* Standing. *Constitutional Law,* Taking of property. *Due Process of Law,* Taking of property.

In an action brought under G. L. c. 40A, § 17, seeking review of a decision of a zoning board of appeals granting a building permit, no evidence was presented to rebut the presumption that the abutters, who sought to challenge the board's action, had standing as persons aggrieved to maintain the appeal. [127-128]

Where a parcel of land failed to conform to the minimum lot width requirement of the applicable zoning by-law, the owner was not entitled to the issuance of a building permit. [128-130]

This court declined to consider a constitutional issue regarding a zoning dispute where the issue had not been raised in the proceedings below. [130]

CIVIL ACTIONS commenced in the Superior Court Department on November 17 and November 27, 1995, respectively.

After consolidation of the cases, the cases were heard by *Charles J. Hely,* J., on a motion for summary judgment.

---

[1]Deborah Valcourt, Paul A. Pelletier, Wilhelmina T. Pelletier, and Joseph Paul Pelletier.

[2]The building inspector of Swansea; Roland J. Martelly and Helen Martelly; Philip R. Martelly; and Gale Martelly, individually and as trustee of the Martelly Land Trust.

[3]Philip R. Martelly and Gale Martelly, individually and as trustee of the Martelly Land Trust vs. Zoning Board of Appeals of Swansea, Raymond A. Valcourt, Deborah Valcourt, Paul A. Pelletier, Wilhelmina T. Pelletier, and Joseph Paul Pelletier.

[4]Justice Spina participated in the deliberation on this case and authored the opinion while an Associate Justice of this court, prior to his appointment as an Associate Justice of the Supreme Judicial Court.

*Richard E. Burke, Jr.,* for Philip R. Martelly & others.

*Alan A. Amaral* for Raymond A. Valcourt & others.

Spina, J. A Superior Court judge, in a pair of consolidated cases, ordered summary judgment for the plaintiffs, Raymond and Deborah Valcourt and Paul, Wilhelmina, and Joseph Pelletier, abutters to a parcel of land owned by Gale Martelly, trustee of the Martelly Land Trust, in the town of Swansea, the result of which was to annul a decision of the Swansea Zoning Board of Appeals (board) and to declare invalid a building permit issued to Philip R. Martelly, husband of Gale (Martellys). The Martellys, Philip Martelly's parents, the board, and the building inspector (collectively, the appellants) appeal, claiming that the abutters lack standing and that the judge erred in concluding that the term "frontage" means an uninterrupted line. The Martellys also claim on appeal, for the first time, that the interpretation of the zoning by-law advanced by the abutters deprives them of all economically viable uses of their land, and as such constitutes a taking. We affirm.

The material facts are not in dispute. Philip's parents acquired approximately 19.5 acres in Swansea on December 15, 1961. The tract had frontage of approximately 260 feet on Pearse Road and frontage in two noncontinuous sections of 262 feet and 122 feet on Wilbur Avenue, both public ways. Over the years, they conveyed smaller parcels from the tract and, by 1994, were left with approximately 16.2 acres having frontage of 20 feet on Pearse Road and frontage in two noncontinuous sections of 111.91 feet and 50 feet on Wilbur Avenue. The 16.2 acres is depicted roughly on the sketch appended to this opinion, shown thereon as two shaded areas labeled A and B.

Philip Martelly filed a plan with the Swansea planning board showing a division of his parents' 16.2 acre tract into the parcels A and B, as shown on the sketch. Parcel A is shaped like a lower case letter "h." It contains 5.9 acres and has frontage on Wilbur Avenue in noncontinuous segments of 111.91 feet and 38.09 feet, respectively, for a total of 150 feet, the minimum frontage required under the zoning by-law.[5] Parcel B contains about 10.3 acres and has frontage of 11.91 feet on Wilbur Avenue and 20 feet on Pearse Road. The division would create a violation of the zoning by-law because parcel B, a building

---

[5]The Swansea zoning by-law, § III B(1)(a), prohibits the erection of a principal structure on a lot "having a frontage of less than one hundred fifty (150) feet."

lot on which Philip Martelly's parents maintain their home, would be left without sufficient frontage on a public way.[6,7] Presumably to cure this problem, the registered land surveyor who created the plan inserted a notation that Philip's brother and sister-in-law, owners of parcels X and Y on the appended sketch, would convey parcel X, which abuts the parents' tract on Pearse Road, to the parents. Such a transfer would increase the frontage of parcel B on Pearse Road from 20 feet to 170 feet, an amount in compliance with the frontage requirements of the zoning by-law. On July 11, 1994, the planning board endorsed the plan as not requiring approval under the subdivision control law, pursuant to G. L. c. 41, § 81P.[8] On October 12, 1994, the parents conveyed parcel A to Gale Martelly, trustee of the Martelly Land Trust. To date, parcel X has not been conveyed to the parents.

Armed with the plan, Philip applied for a building permit to construct a house on parcel A. The building inspector issued the permit on May 8, 1995. On June 15, the abutters made demand on the building inspector, pursuant to G. L. c. 40A, § 7, to enforce the by-law and rescind the permit on the ground that parcel A did not have 150 feet of frontage, measured as a continuous line, and that the proposed division would reduce the frontage of parcel B below the minimum requirements of the by-law. See note 6, *supra.* The building inspector responded on June 27, declining to rescind the permit. The abutters filed an appeal with the zoning board on July 18,[9] accompanied by notice to the town clerk and the building inspector, in conformity with G. L. c. 40A, § 15. The board held a hearing on September 7, at the conclusion of which counsel for the abutters requested three weeks in which to file a brief. The

---

[6]The zoning by-law, § III B(1)(b), prohibits reducing a parcel to the point where it does not comply with frontage requirements. Compare *Sorenti* v. *Board of Appeals of Wellesley*, 345 Mass. 348 (1963); *DeCicco* v. *Berwick*, 27 Mass. App. Ct. 312, 314 (1989). See G. L. c. 41, § 81L (definition of "Subdivision").

[7]A previous board decision concluded that two noncontinuous segments of 112 feet and 50 feet provided sufficient frontage for the undivided lot. That decision does not appear to have been appealed.

[8]Planning board endorsement of a plan under G. L. c. 41, § 81P, does not constitute approval under the zoning by-law. See *Cricones* v. *Planning Bd. of Dracut*, 39 Mass. App. Ct. 264, 268 (1995).

[9]There is no dispute as to the timeliness of that appeal, filed within thirty days of the response to their § 7 request for enforcement. See *Vokes* v. *Avery W. Lovell, Inc.*, 18 Mass. App. Ct. 471, 479 (1984).

board approved the request. The chair commented that there was no time limit within which the board was required to file its decision, but Deborah Valcourt declared that the board only had until October 26. On October 30, counsel for the abutters notified the board and the parties in interest, in accordance with the procedure set forth in G. L. c. 40A, § 15, fifth par., that the abutters' appeal had been granted constructively on October 26 for failure of the board to act within 100 days of the filing of the appeal. The board filed its decision on November 8 denying the abutters' appeal. As reason for its decision, the board stated that the by-law did not require that frontage be a continuous line.

The Martellys filed a complaint for declaratory relief on November 17 seeking a declaration that there had been no constructive grant and that board's decision was timely and valid.[10] The abutters filed a complaint on November 27, 1995, seeking judicial review of the board's decision pursuant to G. L. c. 40A, § 17.

1. *Standing.* The appellants argue that the abutters lack standing to appeal the board's decision because they failed to establish their status as persons aggrieved within the meaning of G. L. c. 40A, § 17. The abutters contend that, as abutters, they are presumed to have standing, and, absent a proper challenge to their status as persons aggrieved, the presumption is sufficient to confer standing to maintain their appeal.

A decision of a zoning board may be challenged only by a "person aggrieved" within the meaning of § 17. See *Marashlian v. Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). A person is "aggrieved" if she suffers some infringement of her legal rights. See *Circle Lounge & Grille, Inc. v. Board of Appeal of Boston*, 324 Mass. 427, 430 (1949); *Waltham Motor Inn, Inc. v. LaCava*, 3 Mass. App. Ct. 210, 213-215 (1975). The injury must be personal to the plaintiff and supported by specific facts. See *Barvenik v. Aldermen of Newton*, 33 Mass. App. Ct. 129, 132-133 (1992). Abutters, as "parties in interest" who receive notice of the public hearing, are presumed to be aggrieved. See *Marotta v. Board of Appeals of Revere*, 336 Mass. 199, 204 (1957); *Watros v. Greater Lynn Mental Health & Retardation Assn.*, 421 Mass. 106, 110-111 (1995). The presumption is rebuttable, and recedes if standing is

---

[10]On appeal, neither party has addressed these issues; they are, therefore, waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).     .

challenged and the challenge is supported by evidence. The issue of standing "will be determined on all the evidence with no benefit to the [abutter] from the presumption." *Marotta* v. *Board of Appeals of Revere, supra* at 204. See *Watros* v. *Greater Lynn Mental Health & Retardation Assn., supra* at 111; *Waltham Motor Inn, Inc.* v. *LaCava, supra* at 215; *Barvenik* v. *Aldermen of Newton, supra* at 131-132.

The appellants do not dispute that the abutters were entitled to the presumption of standing. Rather, they contend that the presumption disappeared when that status was challenged by the Martellys' answer to the abutters' complaint and by the appellants' memoranda of law opposing the abutters' motions for summary judgment. It is not enough simply to raise the issue of standing in a proceeding under § 17. The challenge must be supported by evidence. See *Watros* v. *Greater Lynn Mental Health & Retardation Assn.,* 421 Mass. at 111; *Marashlian* v. *Zoning Bd. of Appeals of Newburyport,* 421 Mass. at 721; *Bell* v. *Zoning Bd. of Appeals of Gloucester,* 429 Mass. 551, 553-554 (1999); *Barvenik* v. *Aldermen of Newton,* 33 Mass. App. Ct. at 131 n.7. The record before us is devoid of any such evidence. While the appellants correctly argue that standing is a jurisdictional matter under § 17 that may be raised at any time, *Marotta* v. *Board of Appeals of Revere,* 336 Mass. at 202-203, their burden of producing some evidence to rebut the presumption of standing remains unchanged, and here was unmet. Consequently, the presumption remains operative and the abutters are "persons aggrieved" within the meaning of § 17. See *Watros* v. *Greater Lynn Mental Health & Retardation Assn., supra; Murray* v. *Board of Appeals of Barnstable,* 22 Mass. App. Ct. 473, 476 (1986).

2. *Frontage.* The appellants argue that the judge erroneously concluded that frontage must be a continuous line. They urge us to overturn the judgment of the Superior Court because zoning is "a local matter," *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass. 114, 117 (1955), and the construction placed on a local by-law by the board charged with its administration is entitled to substantial deference, *Manning* v. *Boston Redev. Authy.,* 400 Mass. 444, 453 (1987). See *Duteau* v. *Zoning Bd. of Appeals of Webster,* 47 Mass. App. Ct. 664, 669-670 (1999).

The by-law does not define the term "frontage," and the board based its decision on the absence of any requirement in the by-law that frontage be continuous. "In the absence of an

express definition, the meaning of a word or phrase used in a local zoning enactment is a question of law, . . . and is to be determined by the ordinary principles of statutory construction. Specific provisions of a zoning enactment are to be read in the context of the law as a whole, giving the language its common and approved meaning 'without regard to . . . [the court's] own conceptions of expediency.' " *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham,* 382 Mass. 283, 290 (1981), quoting from *Kurz* v. *Board of Appeals of N. Reading,* 341 Mass. 110, 112 (1960). A zoning by-law should be construed sensibly, with regard to its underlying purposes, *Murray* v. *Board of Appeals of Barnstable,* 22 Mass. App. Ct. at 478-479, and, if possible, as a harmonious whole, *Foxborough* v. *Bay State Harness Horse Racing & Breeding Assn.,* 5 Mass. App. Ct. 613, 618 (1977).

The motion judge concluded that from the "dearth of any reported decisions on divided frontage . . . landowners, developers, and zoning enforcement authorities commonly understood the term" "frontage . . . to mean a single, continuing property line of a lot running along a public way, an approved way, or a street that conforms to the by-law."[11] We do not reach the broader issue because the language of the by-law is dispositive of the issue.

Section VIII F of the Swansea zoning by-law states:

> "Lot frontage shall be as required for the particular district or not less than one hundred fifty (150) feet and shall be measured along the street lot line between the side lot lines, provided that the width of the lot shall not be less than one hundred twenty (120) feet for that part of the lot between the street and the straight line connecting the points of the side lot lines distance fifty (50) feet from the street, measured at right angles thereto."

---

[11]Leading treatises do not discuss divided frontage as an issue that arises in the interpretation of frontage requirements of zoning by-laws, and the appellants have cited no authority that has considered the issue. See Bobrowski, Massachusetts Land Use and Planning Law § 12.7.2 (1993); Healy, Massachusetts Zoning Manual §§ 17.13-17.20 (1995); Eno & Hovey, Real Estate §§ 23.1 et seq (1995); Randall & Franklin, Municipal Law and Practice § 616 (1993); Anderson, American Law of Zoning § 9.65 (3d ed. 1986 & Supp. 1992); Annot., Validity and Construction of Zoning Regulations Prescribing a Minimum Width or Frontage for Residence Lots, 96 A.L.R. 2d 1367, 1367-1392 (1964 & Supp. 1993 & 1999).

Even were we to conclude that the by-law permits split front-age, the minimum lot width requirement of 120 feet to a depth of 50 feet from the street would require one segment of front-age to be at least 120 feet. The frontage segments of parcel A are 111.91 feet and 38.09 feet. Parcel A fails to meet the minimum lot width requirement of the by-law; therefore, it was wrong to issue a building permit. A correct ruling of the trial court will be upheld even though we rely upon a different ground than that relied upon by the judge deciding the motions for summary judgment. See *Kelly* v. *Avon Tape, Inc.*, 417 Mass. 587, 590 (1994).

3. *The claim of a taking.* The Martellys argue that the interpretation advanced by the abutters and adopted by the motion judge constitutes an unconstitutional taking. This issue was never raised in the Superior Court. "The general rule is that an issue not raised in the trial court cannot be argued for the first time on appeal." *M.H. Gordon & Son, Inc.* v. *Alcoholic Bevs. Control Commn.*, 386 Mass. 64, 67 (1982). The court has on occasion expressed its views on a constitutional issue or an issue of public importance, though not properly preserved for review, where, unlike here, the condition of the record was such that the issue could be resolved intelligently. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943); *Edgar* v. *Edgar*, 403 Mass. 616, 618 n.1 (1988). Compare *E.H.S.* v. *K.E. S.*, 424 Mass. 1011 (1997).

There has been no showing here that the Martellys could not create a building lot on parcel A by utilizing the procedures under G. L. c. 41, §§ 81K et seq., the subdivision control law. Nor has there been a showing how the facially valid 150 foot frontage requirement is unconstitutional as to parcel A. Compare *MacNeil* v. *Avon*, 386 Mass. 339, 343 (1982). The difficulty in which the Martellys find themselves is largely self-inflicted. It arises from the division of Philip's parents' tract into two lots that fail to conform to the requirements of a zoning by-law that was in existence before parcel A was conveyed. See *Leonard* v. *Brimfield*, 423 Mass. 152, 156, cert. denied, 519 U.S. 1028 (1996).

The judgments were not in error and must be affirmed.

*So ordered.*